965 So.2d 1193 (2007)
J.P. MORGAN TRUST COMPANY, N.A., and J.P. Morgan Chase Bank, N.A., Appellants,
v.
Daniel G. SIEGEL, individually, and Simon B. Siegel, individually and as Co-Trustee of the Trusts Created under Articles Fifth and Sixth of the Dorothy H. Rautbord Amended and Restated Agreement of Trust, Dated March 30, 1990, as amended, Appellees.
No. 4D06-4912.
District Court of Appeal of Florida, Fourth District.
September 19, 2007.
Rehearing Denied October 29, 2007.
Elise D. Weakley and Matthew Triggs of Proskauer Rose LLP, Boca Raton, for appellants.
Richard A. Goetz of Hodgson Russ LLP, Boca Raton, for appellees.
SHAHOOD, C.J.
This is an appeal by J.P. Morgan Trust Company, N.A., and J.P. Morgan Chase Bank, N.A. (collectively "J.P. Morgan") from the trial court's non-final order granting partial summary judgment in favor of Daniel G. Siegel and Simon B. *1194 Siegel ("the Siegels"). The issue is the propriety of the trustee's payment of its attorneys' fees from trust assets without prior court order. We hold that J.P. Morgan should have realized it was in a position of conflict and sought court approval prior to paying its attorneys' fees from trust assets. Accordingly, we affirm.
In 1990, Dorothy H. Rautbord created the Dorothy H. Rautbord Amended and Restated Agreement of Trust ("Trust"). The Trust was revocable. Article Fifth of the Trust directed that upon Rautbord's death the Trust balance was to be divided into equal shares for Rautbord's surviving children after the payment of certain specific bequests. An amendment provided that during Rautbord's lifetime, the Trustee would pay her as much of the Trust income and principal as the Trustee deemed necessary for her "support, maintenance, health, comfort or general welfare."
J.P. Morgan Chase Bank, N.A. served as trustee of the Trust from November 1, 1995 through March 6, 2003. J.P. Morgan Trust Company, N.A. assumed responsibility as trustee on March 6, 2003 concurrent with the transfer of the situs of the Trust from New York to Florida. Rautbord, who resided in Palm Beach County, died on February 28, 2002. She was survived by her three children: Judith S. Novak, Daniel Siegel, and Simon Siegel.
In March 2003, J.P. Morgan filed an action (hereinafter "the 2003 action") in the Fifteenth Judicial Circuit for a judicial accounting of the Trust for the period from November 1, 1995 through December 31, 2002. J.P. Morgan requested the court to judicially approve its accounts and discharge it from all liability for the period of November 1, 1995 through December 31, 2002. It also asked the court to grant its attorneys' fees and costs as shown in an accounting.
The Siegels served their answer and affirmative defenses on April 16, 2003. In the first affirmative defense they claimed that J.P. Morgan's accounting did not provide sufficient detail to allow them to determine the propriety of the distributions. The second affirmative defense stated that certain distributions by the trustee to Rautbord may have been in error. The third affirmative defense complained that the amount of J.P. Morgan's attorneys' fees was excessive for a trust of that type and that it was impossible to determine from the accounting whether the funds expended for attorneys' fees were appropriate and necessary.
The parties engaged in discovery. J.P. Morgan sent interrogatories to the Siegels seeking specific information about their objections to the accounting and seeking further information regarding their affirmative defenses. The Siegels' answers to the interrogatories contained thirty lengthy pages of detailed allegations of breaches of fiduciary duty and trust mismanagement by J.P. Morgan.
The Siegels filed an amended petition in the probate proceeding seeking to remove J.P. Morgan as personal representative, appoint a successor personal representative, surcharge J.P. Morgan, and determine compensation for J.P. Morgan. The petition summarized the same alleged improprieties in the administration of the Trust that were referenced in the sworn answers to interrogatories in the 2003 action. The trial court dismissed the petition.
In November 2003, the trial court granted partial summary judgment in favor of J.P. Morgan in the 2003 action, finding that the Siegels lacked standing to challenge any distributions made prior to their mother's death. The trial court reasoned *1195 since the trust was revocable prior to their mother's death, the Siegels had no present interest in the trust during her lifetime. We subsequently reversed on the standing issue. Siegel v. Novak, 920 So.2d 89, 95 (Fla. 4th DCA 2006).
On February 22, 2006, the Siegels filed a new lawsuit against J.P. Morgan and Judith Novak asserting various causes of action relating to the time period of January 1, 2003 through September 1, 2005. J.P. Morgan did not use Trust assets to pay attorneys' fees associated with that litigation. In July 2006, J.P. Morgan reimbursed the trust the sum of $32,337.50 in attorneys' fees it erroneously paid from the Trust in connection with its defense of the 2006 action.
In September 2006, the parties entered into a stipulation whereby J.P. Morgan agreed to make a partial distribution to each of the beneficiaries of their one-third interest in the remaining Trust assets. J.P. Morgan also agreed not to pay further attorneys' fees out of Trust assets without court approval. Following entry of the stipulation, the parties each moved for partial summary judgment on the issue of whether it was proper for J.P. Morgan, in its capacity as trustee, to pay attorneys' fees from Trust assets for the legal services rendered in the 2003 action or whether it should have sought prior court approval.
The trial court rendered its order after a hearing. The court rejected the argument that the Siegels' answer and affirmative defenses in the 2003 action should have put J.P. Morgan on notice of any potential corporate or individual liability. However, the trial court found that the Siegels' answers to interrogatories in the 2003 action "should have absolutely alerted J.P. Morgan to the undeniable realization that they were going to be facing charges of individual/corporate liability for a breach to their fiduciary duties as it applies to distributions from the trust." The court recognized the tension between its ruling and prior case law in that no pleading had been filed against J.P. Morgan setting forth the alleged fiduciary breach and damages sought as a result.
The trial court directed that J.P. Morgan "shall forthwith contact any law firm that received attorney's fees or costs from the Trust commencing November 1, 2003 and all of those funds shall be forthwith returned to the Trust pending further order of this Court." The trial court subsequently clarified its order by directing that if J.P. Morgan was unable to secure the return of attorney's fees and costs which law firms received on or after November 1, 2003 by February 11, 2007, J.P. Morgan would reimburse the Trust for amounts not returned.
The issue is whether the trial court erred in holding that the Siegels' filing of answers to interrogatories containing various allegations of breach of fiduciary duty and trust mismanagement required J.P. Morgan to seek court approval before paying its attorneys' fees from Trust assets. J.P. Morgan stresses that no pleading against it in its individual capacity was filed by the beneficiaries until 2006. It argues that mere service of interrogatory responses alleging breaches of fiduciary duty and trust mismanagement should not require it to seek court approval before paying its attorneys' fees from Trust assets. The Siegels contend that the trial court's order was consistent with well-established principal requiring that a trustee placed in a position of conflict must report to the court for guidance, including as to the payment of attorneys' fees.
In Shriner v. Dyer, 462 So.2d 1122, 1124 (Fla. 4th DCA 1984), the beneficiaries of a trust argued that the trustees had improperly used trust funds to pay the attorneys' *1196 fees they incurred for their individual defenses in a previous suit. This court agreed, citing section 737.403(2), Florida Statutes (1983), which provided that when "the duty of the trustee and his individual interest . . . conflict in the exercise of a trust power, the power may be exercised only by court authorization,. . . ." Shriner, 462 So.2d at 1124. The court in Shriner based its holding on the fact that the trustees had defended against individual liability for trust mismanagement in the prior action for which they had paid the attorneys' fees. This resulted in a conflict of interest between the trustees' personal interests and their positions as trustees. Therefore, "[the trustees] should have obtained court approval before exercising their trustee power to use trust funds to pay their attorney's fees." Id. This court reversed the denial of the surcharge against the trustees. Id.
Brigham v. Brigham, 934 So.2d 544 (Fla. 3d DCA 2006), is a recent case following Shriner. The parties in Brigham were the beneficiaries of a trust. 934 So.2d at 545-46. The appellees sued the appellants in their individual capacities as well as in their capacities as trustees alleging, inter alia, trust mismanagement. Id. at 546. Appellees also filed a motion to prevent appellants from using trust assets to pay their attorneys' fees. The trial court entered an order directing the appellants to repay the attorneys' fees paid from the trust and preventing further payment of attorneys' fees out of trust funds without court approval. Id.
On appeal, the court cited section 737.403(2), Florida Statutes (2003), which provided: "If the duty of the trustee and the trustee's individual interest or his or her interest as trustee of another trust conflict in the exercise of a trust power, the power may be exercised only by court authorization. . . ." Citing Shriner, the court held that the appellants' personal interests conflicted with their positions as trustees because they were forced to defend against individual liability. Brigham, 934 So.2d at 547. The court affirmed, holding that this conflict required the trustee to obtain court approval before paying attorneys' fees with trust assets. Id.
Section 737.403(2), Florida Statutes, was amended effective July 1, 2005. Section 737.403(2)(e) now provides, in pertinent part:
(2) If the duty of the trustee and the trustee's individual interest or his or her interest as trustee of another trust conflict in the exercise of a trust power, the power may be exercised only by court authorization. . . . Court authorization is not required for any of the following:
. . . .
(e) Payment of costs or attorney's fees incurred in any trust proceeding from the assets of the trust unless an action has been filed or defense asserted against the trustee based upon a breach of trust. Court authorization is not required if the action or defense is later withdrawn or dismissed by the party that is alleging a breach of trust or resolved without a determination by the court that the trustee has committed a breach of trust.
§ 737.403(2)(e), Fla. Stat. (2005) (emphasis supplied).
The legislature has resolved the issue in favor of the interpretation urged by J.P. Morgan that requires a pleading be filed. However, as J.P. Morgan acknowledges, the new statute was not in effect for the vast majority of the time period at issue.[1]
*1197 In Shriner and Brigham, the filing of a pleading against a trustee in his individual capacity created a conflict of interest that required the trustee to seek court approval before paying its attorney's fees from trust assets. These cases provide scant guidance on the question of what else could suffice to create such a conflict. J.P. Morgan argues that under the trial court's ruling all trustees are placed in a position of uncertainty as to when to seek court approval before paying attorneys' fees from trust assets. However, we hold that in this case J.P. Morgan should have known from the Siegels' answers to interrogatories in the 2003 action that it would face an action based on the alleged breaches of fiduciary duty and trust mismanagement. At the very least, J.P. Morgan should have realized it was in a position of conflict at that point. Based on the foregoing, we affirm.
Affirmed.
STEVENSON, J., and BELANGER, ROBERT E., Associate Judge, concur.
NOTES
[1] The Siegels' 2006 lawsuit against J.P. Morgan and Judith Novak asserted various causes of action relating to the time period of January 1, 2003 through September 1, 2005.