983 So.2d 643 (2008)
Lauri F. PARKER and Cassie Daniele Parker, Appellants,
v.
Steven J. SHULLMAN, as Trustee of the Paul Silberman Marital Trust, etc., Appellee.
No. 4D06-4824.
District Court of Appeal of Florida, Fourth District.
May 14, 2008.
*644 William Jay Palmer of Shutts & Bowen LLP, Miami, for appellants.
James M. Kaplan and Alan M. Herman of Kaplan Zeena LLP, Miami, and Peter J. Forman of Gutter Chaves Josepher Rubin Ruffin & Forman, P.A., Boca Raton, for appellee.
SHAHOOD, C.J.
Appellants, Lauri Parker and Cassie Daniele Parker, appeal the trial court's final judgment in favor of trustee Steven J. Shullman. Appellants raise four issues on appeal. We affirm in part and reverse in part.
Barbara Katz Silberman was married to Paul Silberman. She was the mother of appellant Lauri Parker and grandmother of appellant Cassie Parker. Barbara started a successful women's sportswear business called Barbara Katz Sportswear, Inc. (Sportswear). Barbara owned and operated the business from the time she started it over forty years ago until her unexpected death in August 2000. Steven Shullman was the accountant for Sportswear for over twenty years prior to Barbara's death.
As part of Barbara's estate plan, she created the Barbara Katz Silberman Revocable Trust as well as a trust for her husband called the Paul Silberman Marital Trust. Each of these trusts had sub-trusts for her daughter Lauri and granddaughter Cassie. Barbara designated *645 Shullman as the successor trustee of all of the trusts. She also named Shullman as personal representative of her estate. When Barbara died, Shullman became trustee of the trusts.
Lauri Parker and Steven Shullman have had a difficult and litigation-filled relationship ever since. This appeal relates to the accountings prepared and filed by Shullman as personal representative and trustee for the years 2001, 2002, and 2003. At trial, Shullman testified at length about his conduct following the death of Barbara Silberman. As trustee of both trusts, Shullman became responsible for Barbara's entire portfolio of assets, including her business, her house, and her securities. Lauri immediately wanted to start receiving distributions, but Shullman needed to understand the tax consequences and income flow before getting to that point.
According to Shullman, the period following Barbara's death was a very volatile time for Sportswear because it was a closely held corporation and Barbara was essentially the whole business. This made it difficult to retain the business's value. Some employees were thinking of leaving, and Shullman was receiving offers to purchase the business. However, Shullman decided it was in the best interests of the beneficiaries to keep the business rather than sell it, because if properly managed it would bring in over $500,000 per year. From the time he took over running Sportswear to the time of trial, the business earned a net income of $500,000 to $600,000 a year. The business increased in value from about $1 million in August 2000 to about $2.6 million as of December 31, 2003. The business distributed a total of $1.45 million to the Paul Silberman Trust and the Barbara Katz Silberman Trust from the date of Barbara's death through December 31, 2003.
The will and trusts gave Shullman the power to retain and invest property. Shullman had to deal with selling Barbara's home, which was worth approximately one million dollars. In addition, Barbara had an IRA and trust account consisting of marketable securities at Charles Schwab. Shullman began reviewing and analyzing her account statements and met with her account representative at Charles Schwab. Shullman interviewed several investment advisors and financial planners. In December 2000, Shullman retained Comerica Bank to manage the securities. The IRA and securities eventually lost a significant amount of money.
In early 2001, Lauri Parker initiated an action against Shullman "as trustee of the Paul Silberman Marital Trust and as Trustee of the Barbara Katz Silberman Trust." The action sought an accounting (Count I), and to have Shullman removed as the trustee of her mother's and Paul's trust and as personal representative of her mother's estate (Count II). The trial court found that certain actions taken by Shullman were questionable and vindictive, but did not constitute sufficient evidence for his removal as trustee and personal representative. This court agreed with the trial court's characterization of some of Shullman's actions, but affirmed the trial court's decision denying Lauri Parker's petition. Parker v. Shullman, 843 So.2d 960, 961 (Fla. 4th DCA), rev. denied, 857 So.2d 197 (Fla.2003).
In January 2002, the trial court issued a construction order. The court's order found that Barbara intended to provide generously for Lauri and Cassie. The court found that the trustee was required under the trust to pay certain expenses for Cassie, such as education. The court agreed with the trustee's position that Lauri was not entitled to income from estate assets, additional dividends from *646 Sportswear, or income from the trusts while the sub-trust for her benefit was not yet funded. The court held that both Barbara's Trust and Paul's Trust were required to distribute income to Lauri's and Cassie's Trusts because they held stock in Sportswear, and that no further Sportswear dividends were to be made until after Lauri's and Cassie's trusts were funded. The court stated, with regard to those sub-trusts: "The funding of the trusts should occur as soon as possible so that the estate can properly be closed."
Lauri filed objections to the compensation Shullman had paid himself as CEO of Sportswear, whose stock was held in the name of the trusts. The trial court dismissed the claim with prejudice. Lauri appealed and this court affirmed on the basis that the language of the trust gave the trustee broad powers, including the power to elect anyone to run the company. This court held that the trustee's simultaneous participation in the company and management of the trusts was authorized by the text of the trusts. Parker v. Shullman, 906 So.2d 1236, 1237 (Fla. 4th DCA), rev. denied, 915 So.2d 1196 (Fla.2005).
Shullman filed accountings as personal representative and trustee for the years 2001, 2002, and 2003. Lauri filed numerous objections to these accountings based on the actions by Shullman and fees and expenses paid by the estate and trust. In April 2003, Lauri, individually and as guardian of Cassie, filed a complaint based on the objections. The complaint also alleged that Shullman had violated his duty under the Prudent Investor Rule. The trial court bifurcated the objections relating to the payments of fees from the objections relating to matters other than fees (also referred to as "technical objections").
The trial on the matters other than fees began in January 2005 and was later continued until May 2005. Shullman testified regarding his conduct as trustee as previously outlined above. Shullman presented the expert testimony of Dr. Edward Moses in support of his position that he did not violate the Prudent Investor Rule. Shullman also presented the expert testimony of Gary Dix, a CPA whose company prepared a valuation report of the shares of Sportswear as of December 31, 2003, in support of his position.
The professional fees issue was tried in August and September 2006. On October 30, 2006, the trial court issued its Final Judgment and Order on the remaining issues, which related to fiduciary and professional fees. After a brief review of the facts, the trial court stated: "At no time has Steven J. Shullman ever been named individually as a party to any adversary proceeding nor has there been any allegation nor proof presented that the trustee's individual interests conflicted with his duties to the various trusts." The trial court denied surcharge against Shullman and denied all of appellants' remaining objections.
The first issue appellants raise is that the trial court erred in denying the objections of appellants that Shullman's failure to fund the trusts for Lauri and Cassie and to distribute the trust's net income violated the trust instruments, the construction order, and Florida law. This issue is without merit.
Section 737.3054, Florida Statutes (2003), provides that the interests of all beneficiaries of a revocable trust are subject to the trustee's duty to pay the expenses of the administration and obligations of the grantor's estate. This court was presented with a similar situation in First Union National Bank v. Jones, 768 So.2d 1213, 1215 (Fla. 4th DCA 2000), in which a trustee argued the trial court had erred in ordering disbursement of the entire *647 corpus of a trust prior to the trust having the opportunity to seek its attorney's fees. This court reversed and remanded:
Although a trust instrument directs termination of the trust and the distribution of the principal to the beneficiaries upon the settlor's death, the trustee cannot make complete distribution until provision has been made for all the expenses, claims and taxes the trust may be obligated to pay, and certainly not before these amounts have been fully ascertained. Moreover, when the trust is the beneficiary of the grantor's probate estate and is charged with the duty to pay the expenses, claims, and taxes imposed on the probate estate, the trustee cannot make complete distribution of the trust until the probate proceeding has been substantially concluded, which was not the case here.
First Union, 768 So.2d at 1215; see also Sheaffer v. Trask, 813 So.2d 1051, 1052 (Fla. 4th DCA 2002)(citing First Union in reversing trial court's grant of petition to distribute trust assets before authorizing trustee to pay trust debts and expenses); Merrill Lynch Trust Co. v. Alzheimer's Lifeliners Ass'n, 832 So.2d 948 (Fla. 2d DCA 2002)(holding trial court abused its discretion in finding trustee in civil contempt for failing to distribute trust where it would not have been prudent to do so without an accounting).
Appellants next argue that the trial court erred in concluding that Shullman did not violate section 518.11, Florida Statutes, the Prudent Investor Rule.
Section 518.11(1), Florida Statutes (2003), provides:
(a) The fiduciary has a duty to invest and manage investment assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust. This standard requires the exercise of reasonable care and caution and is to be applied to investments not in isolation, but in the context of the investment portfolio as a whole and as a part of an overall investment strategy that should incorporate risk and return objectives reasonably suitable to the trust, guardianship, or probate estate. If the fiduciary has special skills, or is named fiduciary on the basis of representations of special skills or expertise, the fiduciary is under a duty to use those skills.
Additionally, section 518.11 provides that the fiduciary's decisions are to be judged under the facts and circumstances at the time of the decision or action, and that the test is one of conduct rather than resulting performance. § 518.11(b), Fla. Stat. (2003).
The testimony and evidence at trial supports the trial court's finding that Shullman's conduct with respect to the trust's complete portfolio of assets satisfied the Prudent Investor Rule and that appellant's objections were heavily based on hindsight rather than in the context of the existing facts and circumstances at the time. The trial court found that Shullman relied upon the advice of Comerica in managing the securities. Shullman testified at length about the steps he took following Barbara's death to interview and eventually retain an investment adviser and schedule meetings with them to advise them of the trust requirements, and that he followed their advice. The trial court's decision is therefore supported by competent substantial evidence in the record that Shullman hired Comerica to manage the securities and reasonably relied on them in his capacity as trustee.
Appellant next argues that Shullman should be surcharged for paying fees from the trusts without court order.
*648 In J.P. Morgan v. Siegel, 965 So.2d 1193 (Fla. 4th DCA 2007), this court recently affirmed the trial court's holding that J.P. Morgan, though not named as a defendant in its individual capacity, should have known it was in a position of conflict after the Siegels provided thirty pages of detailed allegations of breaches of fiduciary duty and trust mismanagement in response to J.P. Morgan's interrogatories in an earlier action.
Recognizing that he did not need to be named individually as a defendant for a conflict to exist, Shullman asserts that even aside from the fact he was not named individually, there is no evidence that a conflict existed. Shullman is correct as to the action to remove him, as it did not seek to surcharge him but sought only an accounting for the trusts. However, in accordance with Siegel, we hold that the action objecting to the compensation Shullman paid himself as CEO of Sportswear put Shullman in a position of conflict under the previous version of section 737.403(2), Florida Statutes, in effect at the time. We therefore reverse on this issue without prejudice to Shullman's ability to seek court approval for the fees incurred defending that action.
Finally, appellants argue that the trial court erred in not sustaining their objection to Shullman's payment of Barbara's $173,557.08 debt to Sportswear from the estate without a claim. This argument is without merit.
Appellants admit that Barbara's trust received a dividend of $135,000. They argue that this was only a portion of the $173,557.08 the Estate paid Sportswear. Approximately $173,000 reduced by the $135,000 dividend would still leave a deficit of approximately $38,000. However, as Shullman argues, this argument ignores that part of the amount related to the automobile that Lauri Parker received, having a value of $73,500. When the amount of the car, which appellants do not dispute that Lauri Parker received, is added to the $135,000 dividend the amount is well over the $173,557.08 the Estate paid Sportswear.
We remand for further proceedings consistent with this opinion.
Affirmed in part, Reversed in part, and Remanded.
HAZOURI and DAMOORGIAN, JJ., concur.