NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0222n.06

No. 12-3993

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Mar 04, 2013***

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JERRY A. SCHWAB; DONNA L. SCHWAB; DAVID A. SCHWAB, | ) ) |
| | ) |
|     Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| HUNTINGTON NATIONAL BANK, | ) |
| | ) |
|     Defendant-Appellee. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

O P I N I O N

BEFORE: DAUGHTREY, ROGERS and McKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.** David Schwab appeals the district court's grant of summary judgment to Huntington National Bank on Schwab's counterclaim that Huntington breached its duties as Trustee of the Schwab Irrevocable Trust. We affirm the district court's grant of summary judgment in favor of Huntington.

I.

**The Trust**

In April 1992, Jerry Schwab established a trust for the benefit of his children. Defendant Huntington National Bank is trustee of the Schwab Trust.[1] The Trust was funded by life insurance

---

[1]Huntington Trust Company of Florida, N.A. was the original trustee. Huntington National Bank later became Trustee as the successor in interest of the Huntington Trust Company of Florida, N.A.

policies on the lives of Jerry Schwab and his wife, Donna. The same day the Trust was established, Jerry Schwab's business, Schwab Industries, Inc., entered into an agreement with Huntington stating that the life insurance premiums funding the Trust were to be paid through Schwab Industries ("The Split Dollar Agreement"). In exchange for payment of the annual premiums, Huntington, as trustee, granted Schwab Industries a collateral interest in the life insurance policies limited to the total premiums contributed by Schwab Industries. The Agreement also stated that it could be terminated upon the happening of certain events, including "expiration of ten (10) days after receipt by either party of written notice of termination given by the other party." R. 16-2, Page ID #200.

**The Bankruptcy and District Court Proceedings**

Eighteen years after the Schwab Trust was created, on February 28, 2010, Schwab Industries filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. One of Schwab Industries' creditors, KeyBank, acting as administrative agent to several other creditors, filed an adversary proceeding in the bankruptcy court asserting that the creditors had a security interest in Schwab Industries' collateral interest in the Split Dollar Agreement, and that KeyBank intended to exercise Schwab Industries' rights to terminate the Agreement so that it could collect the company's interest in the premiums. KeyBank Compl., Bankr. R. 1. As Trustee, Huntington disputed KeyBank's alleged security interest, refused to pay KeyBank what it claimed to be entitled to, contested KeyBank's authority to terminate the Agreement, and argued that "any repayment by Huntington of the premiums paid by SII [may] constitute a breach of Huntington's fiduciary duties under the trust instrument." Huntington Answer, Counterclaim and Third-Party Complaint, Bankr.

R. 9 at 8-9. Accordingly, Huntington requested that the bankruptcy court declare the rights of all the parties under the Split Dollar Agreement.

One of the Trust beneficiaries, David Schwab ("Schwab"), then filed a counterclaim against Huntington alleging that Huntington breached its fiduciary duties as trustee under the statutory and common law of Florida. Bankr. R. 61. The counterclaim argued that Huntington was not acting in the best interests of the beneficiaries when it requested a declaration that it would not be breaching its duties if it disposed of the premiums in accordance with an order of the court. The counterclaim also asserted that Huntington improperly used Trust assets to pay for legal representation in filing its counterclaim against KeyBank and its request for declaratory relief because those expenses were not "reasonable expenses incurred in the management and protection of the trust." Bankr. R. 61 at 11 (quoting the Schwab Trust). Schwab's counterclaim sought an order prohibiting Huntington from paying any costs or fees from the Trust and also sought a refund to the Trust for the attorney's fees already spent.

In November 2011, Schwab filed a motion in the district court to withdraw reference to the bankruptcy action. R. 1. The district court granted the motion on March 16, 2012. R. 12. Shortly thereafter, Huntington moved for summary judgment on KeyBank's original claims, and argued that KeyBank was not entitled to any Trust property and even if it were, it was not entitled to liquidated damages. Huntington Mot. for Summ. J., R. 15. Huntington separately moved for summary judgment on Schwab's counterclaims against Huntington. Huntington Mot. for Summ. J., R. 16.

On May 10, 2012, Schwab filed a brief opposing Huntington's motion for summary judgment. With respect to the breach of fiduciary duties claims against Huntington, Schwab's brief

in opposition argued that by filing the request for declaratory judgment in order to protect itself,

Huntington "stepped out of its role as a fiduciary," and thereby "unnecessarily brought the

beneficiaries into the lawsuit . . ." Schwab Opp., R. 39, Page ID # 365.  The brief also argued that

because Huntington was seeking to protect itself from suit, its interests conflicted with the duties

owed to the Trust, and thus, Huntington should not have used its powers as trustee to pay for legal

representation from the Trust funds.  Schwab Opp., R. 39, Page ID # 365.  It further argued that

Huntington breached its duties by not notifying the beneficiaries immediately after KeyBank sought

termination of the Agreement and attempted to collect Trust property.  Schwab Opp., R. 39, Page

ID # 366.

On July 2, 2012, after successful mediation, KeyBank, Huntington, and Schwab reached a

partial settlement, resolving the disputes over the Split Dollar Agreement and effectively releasing

KeyBank from the action.  R. 64.  Following the settlement and partial dismissal, Schwab's

counterclaim against Huntington was the only outstanding issue.

On July 16, 2012, the district court granted Huntington's motion for summary judgment on

Schwab's counterclaim.  This appeal followed.

## II.

We review a district court's grant of summary judgment de novo.  Summary judgment is

appropriate if "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The party seeking

summary judgment has the initial burden of identifying those portions of the "'pleadings,

depositions, answers to interrogatories, and admissions on file together with the affidavits' which

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986). It is not sufficient for the party opposing summary judgment to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The reviewing court draws all reasonable inferences in the favor of the moving party. *Anderson*, 477 U.S. at 255.

The counterclaim against Huntington alleged mismanagement of the Trust in violation of Florida law.[2] Accordingly, we review the claims on appeal under Florida law.

### III.

Florida trust law requires a trustee to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries . . . ." FLA. STAT. § 736.0801; *see also* FLA. STAT. § 736.0802(1) (stating the trustee is to "administer the trust solely in the interests of the beneficiaries"). Florida law also provides that courts should have "a limited role in supervising the exercise of the trustee's discretion," *DeMello v. Buckman*, 916 So. 2d 882, 886 (Fla. Dist. Ct. App. 2005), and presumes that trustees act within the bounds of sound discretion." *In re Ziegler's Trusts*, 157 So. 2d 549, 550 (Fla. Dist. Ct. App. 1963).

---

[2]The Trust elects Florida law. R. 16-1, Page ID # 197 ("The law of the State of Florida shall govern the interpretation and validity of the provisions of this instrument and all questions relating to the management, administration, investment and distribution of the trusts hereby created.").

Schwab argues that Huntington breached its duties to the Trust beneficiaries in several ways. Schwab's first and second arguments on appeal assert that Huntington breached its duties by continuing to take action on behalf of the Trust even though Huntington had a conflict of interest as one of Schwab Industries' secured creditors. Huntington counters that Schwab forfeited this argument by not raising it below. Huntington is correct.

"[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal." *Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008) (quotation omitted). "Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order." *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) (quotation omitted). "It is well settled law that this court will not consider an error or issue which could have been raised below but was not." *Id.* (quotation and alteration omitted).

The claims Schwab raised below focused entirely on the argument that Huntington breached its duties by requesting a declaration that it would not be breaching its duties if it disposed of the life insurance premiums in accordance with a court order. This argument was made in Schwab's counterclaim, Bankr. R. 61, and in his brief in opposition to Huntington's motion for summary judgment. Schwab Opp., R. 39, Page ID # 365. Schwab never formally raised the argument he now asserts, that Huntington had a conflict of interest as a secured creditor of Schwab Industries, and that the secured creditor conflict somehow resulted in a breach of Huntington's duties.[3] Because Schwab

---

[3]Schwab attempts to argue in his Reply Brief that the issue was discussed during an off-the-record pre-trial conference, Reply Br. at 3-4, and in an exhibit attached to Schwab's opposition to Huntington's motion for summary judgment, Reply Br. at 4. But in order to preserve an issue for appellate review, generally it must be raised sufficiently for the trial court to rule on it. *See*

never raised the issue, it is forfeited. *Vance*, 546 F.3d at 781.

Next, Schwab alleges several ways that Huntington breached its duties to the Trust when Huntington reimbursed itself for legal fees. First, Schwab claims that because of Huntington's conflict of interest as Trustee and secured creditor, Florida law requires court authorization before trust funds can be used to pay attorney's fees. But this argument is rooted in the premise that there was such a conflict in the first place—an issue that we have determined Schwab forfeited. Thus, we also decline to address this argument as it relates to fees.

Schwab next argues that the district court erred by concluding that the amount and purpose of the attorney's fees paid were reasonable and that the fees were for the benefit of the Trust and not for Huntington's personal benefit.

Florida law establishes that trustees have the power to "[p]ay or contest any claim, settle a claim by *or against* the trust, and release, in whole or in part, a claim belonging to the trust," FLA. STAT. § 736.0816(14) (emphasis added); *see also* FLA. STAT. § 736.0811 ("A trustee shall take reasonable steps to . . . defend claims against the trust."), and that trustees are empowered to " . . . defend . . . an action, claim, or judicial proceeding in any jurisdiction to protect trust property or the trustee in the performance of the trustee's duties." FLA. STAT. § 736.0816(23).

The Trust states that Huntington has the power to "employ . . . attorneys . . . and to delegate

_____

*generally*, 157 A.L.R. Fed. 581 § 4 (1999); *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89 (5th Cir. 2011) (stating that to preserve an argument, it "must be raised to such a degree that the district court has an opportunity to rule on it") (quotations omitted). There is no indication in the record in this case that this argument was pressed in any way that the district court could have ruled on it.

to them such powers as the trustee considers desirable." R. 16-1 at 17. Similarly, Florida law establishes that trustees may "[e]mploy . . . attorneys . . . to advise or assist the trustee in the exercise of any of the trustee's powers and pay reasonable compensation and costs incurred in connection with such employment from the assets of the trust . . . ." FLA. STAT. § 736.0816(20); *see also First Union Nat'l Bank v. Jones*, 768 So. 2d 1213, 1214 (Fla. Dist. Ct. App. 2000) ("In Florida, a trustee is entitled to receive payment of his reasonable expenses in managing a trust, including attorney's fees, from the assets of a trust he manages."). Importantly, Florida law also permits trustees to collect fees for litigation against the trust. *See* FLA. STAT. § 736.1007(5)(a) (permitting fees for "[i]nvolvement in . . . adversary proceedings or litigation by or against the trust"); *see also*, *First Union*, 768 So. 2d at 1215 (stating that Florida law entitles trustee to fees for defending itself in an action filed against it by trust beneficiaries who alleged mismanagement of the trust).

The district court concluded that the record was void of any evidence that Huntington's use of counsel and its fee reimbursement were not well within the parameters of Florida law. We agree. In opposing summary judgment, it was Schwab's burden to "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 250, and that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. But Schwab has failed to point to any evidence in the record showing that the amount of fees Huntington incurred was unreasonable or otherwise outside the bounds established under Florida law.

Further, the cases Schwab points to in an effort to support his claims that Huntington should not receive fees for its request for declaratory relief or that it was required to seek court approval are inapposite. In *Shriner v. Dyer*, 462 So. 2d 1122, 1124 (Fla. Dist. Ct. App. 1984), the beneficiaries

sued the trustees (two individuals), in both their individual capacities and as trustees, for trust mismanagement. During the appeal, the beneficiaries contended that the co-trustees improperly paid from the trust funds attorney's fees incurred for their individual defenses. The Florida court agreed. It stated: "Since Dyer and Hartstone defended against individual liability for trust mismanagement in the previous action, their personal interests conflicted with their position as trustees." *Id.* Relying on a then-valid Florida law, which stated that when "the duty of the trustee and his individual interest . . . conflict in the exercise of a trust power, the power may be exercised only by court authorization," the court reasoned, the co-trustees "should have obtained court approval before exercising their trustee power to use trust funds to pay their attorney's fees." *Id.* (quoting FLA. STAT. 737.403(2), *repealed by* Laws 2006, c. 2006-217, § 48, eff. July 1, 2007; Laws 2008, c. 2008-5, § 16, eff. July 1, 2008); *see also Brigham v. Brigham*, 9334 So. 2d 544 (Fla. Dist. Ct. App. 2006) (affirming *Shriner* under a similar set of facts); *J.P. Morgan Trust Co., N.A. v. Siegel*, 965 So. 2d 1193, 1196 (Fla. Dist. Ct. App. 2007) (affirming *Shriner* and *Brigham* and similarly relying on FLA. STAT. 737.403(2)).

The biggest problem for Schwab in relying on these cases is that in 2008 the Florida legislature repealed the law upon which all of these cases are based, FLA. STAT. § 737.403. And Schwab has not pointed to a new law or recent case that would hold the trustee to the same obligations as the former law. In fact, FLA STAT. § 736.0802(10) affirmatively states that payment of fees "incurred in any proceeding" can be made out of the trust *without* court approval. If a beneficiary wants to challenge that general rule, the law puts the burden on the beneficiary to "obtain a court order to prohibit the trustee from paying . . . attorney's fees from trust assets." FLA. STAT.

§ 736.0802(10)(b). To receive such an order, the beneficiary has to "make a reasonable showing by evidence in the record or by proffering evidence that provides a reasonable basis for a court to conclude that there has been a breach of trust." *Id.*; *see also Covenant Trust Co. v. Guardianship of Ihraman*, 45 So. 3d 499, 504 (Fla. Dist. Ct. App. 2010).[4] In other words, the old law stated that a trustee had a duty to seek court authorization for payment of fees anytime a breach of trust action or defense had been asserted against the trustee. By contrast, the new law states that after a breach of trust action or defense has been asserted, the trustee's only affirmative duty is to give notice to the beneficiaries of the fees it intends to pay from the trust (a duty not challenged in this case). In stark contrast to the old law, the new law puts the burden on the beneficiary to seek a court order enjoining such payments.

Schwab requested an order under § 736.0802(10)(b) in his counterclaim, Bankr. R. 61 at 13, but the district court soundly rejected the request in its summary judgment decision because Schwab had not produced any evidence there was a breach of trust. *Schwab v. KeyBank Nat'l Ass'n*, 2012 WL 2906081, at *4 (N.D. Ohio July 16, 2012). On appeal, Schwab did not renew his argument requesting the order under § 736.0802(10)(b), nor did he challenge the district court's decision on that issue. On appeal he only argues that the cases cited above stand for the proposition that Huntington needed court approval prior to paying fees out of the trust.

While the former law and the cases relying on the former law may have proved helpful for

---

[4]Notably, the new law also requires that if a beneficiary makes a breach of trust claim against a trustee, the trustee has to provide notice to the beneficiaries of the trustee's intent to pay fees and costs out of the trust. FLA. STAT. § 736.0802(10)(a). Schwab has not alleged that Huntington violated this provision.

Schwab prior to the 2008 repeal, any conflict as alleged in this case would not have arisen until

Huntington's request for declaratory relief in December 2010. That date was long after the repeal

of § 737.403 and its accompanying duties. And the new law clearly states that "Payment of costs

or attorney's fees incurred in any proceeding from the assets of the trust may be made by the trustee

without the approval of any person and without court authorization . . ." unless the beneficiary

satisfies the standards under FLA. STAT. § 736.0802(10)(b).[5] Accordingly, the district court correctly

granted summary judgment on this claim.

Schwab next contends that Huntington breached its duties by failing to inform the

beneficiaries that KeyBank was seeking to terminate the Split Dollar Agreement and collect trust

assets. Schwab relies exclusively on the decision in *Brent v. Smathers*, 547 So. 2d 683 (Fl. Dist. Ct.

App. 1989), to support his argument. In *Brent*, a trustee-beneficiary brought a claim against her co-

trustee alleging he inadequately advised her of the effects of the trust disbursement. The court

explained that while a trustee has "a duty to keep beneficiaries reasonably informed about the trust

and its administration," *Id.* at 685 (citing G. BOGERT, TRUSTS & TRUSTEES 961 (rev. 2d ed. 1982)),

"in the absence of a request, the trustee is ordinarily not under a duty to furnish information to the

beneficiary." *Id.* at 685-86. However, the court further explained, "'he is under a duty to

---

[5]Florida's revised trust code also states that it "applies to all trusts created before, on, or after such date," "to all judicial proceedings concerning trusts commenced on or after such date," and that "any rule of construction or presumption provided in this code applies to trust instruments executed before the effective date of this code unless there is a clear indication of a contrary intent in the terms of the trust." FLA. STAT. § 736.1303(1)(a), (b) and (d). Accordingly, because the Schwab Trust does not make a contrary indication, the updated law applies to duties arising under the Trust even though the instrument was created in 1992.

communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person with respect to his interest.'" *Id.* at 686 (quoting RESTATEMENT (SECOND) OF TRUSTS § 173 at 379 (1959)).  Applying these principles, the *Brent* court reasoned that the co-trustee "had no duty to explain the effects of the transactions to the beneficiaries unless such an explanation was requested or he knew that they did not have knowledge of the facts." *Id.*

Thus, in this case, *Brent* would preclude liability as to Huntington unless Schwab can show that KeyBank's efforts to terminate the Agreement were material facts affecting Schwab's interest, and that Schwab and the other beneficiaries either requested the information related to KeyBank's efforts to terminate the Agreement, or that Huntington knew that Schwab did not have the information.  The district court concluded that Schwab failed to show how the information was material, and that Schwab's unsubstantiated assertion that Huntington failed to notify the beneficiaries of KeyBank's claim and its possible effects was not enough to withstand summary judgment.  *Schwab v. Keybank Nat'l Ass'n*, 2012 WL 2906081, at *3 (N.D. Ohio July 16, 2012).

Even assuming the information was material, Schwab has failed to produce any evidence that the beneficiaries requested the information regarding KeyBank or that Huntington affirmatively knew that the beneficiaries did not know about KeyBank's efforts.  It is difficult to imagine that Schwab and the other beneficiaries did not have at least some knowledge of KeyBank's strategy since KeyBank's complaint was actually filed in the Schwab Industries bankruptcy action. Schwab's mere allegations that Huntington breached its duty by failing to inform the beneficiaries about the KeyBank issue, without more, is not enough to withstand summary judgment.  *Matsushita Elec.*

*Indus. Co.*, 475 U.S. at 586.

Schwab raises two final arguments, neither of which detains us for long. First, he alleges the district court improperly weighed evidence and made conclusive findings. But this argument is wholly unsupported and thus we decline to address it. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("[I]ssues adverted to [on appeal] in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . .").

Second, Schwab contends that the trust instrument entitles him to attorney's fees for filing his counterclaim against Huntington in "protection of the trust." Reply Br. at 14. The district court did not address this argument because Schwab never raised it. In his Reply Brief, Schwab asserts that this argument was raised in his counterclaim, but he erroneously cites to an irrelevant paragraph, and otherwise he appears to be mistaken. His only claims for relief in the counterclaim were statutory claims for damages under the Florida Trust Code. *See* Bankr. R. 61 at 9, 10, 11, 12 (requesting relief under Fla. Stat. § 736.1001, § 736.1002, and § 736.1004). Moreover, he also failed to raise the argument in his brief in opposition to Huntington's summary judgment motion. Accordingly, we decline to address it now. *See Barner*, 399 F.3d at 749 ("It is well settled law that this court will not consider an error or issue which could have been raised below but was not.") (alteration and quotation omitted).

## IV.

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of Huntington.