[Cite as *Zook v. JPMorgan Chase Bank*, 2017-Ohio-838.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jeffrey Zook et al., | : | |
| Plaintiffs-Appellees, | : | |
| OhioHealth Foundation, Inc. et al., | : | No. 15AP-750 |
| | | (C.P.C. No. 13CV-6033) |
| [Involuntary] Plaintiffs-Appellants, | : | |
| | : | (REGULAR CALENDAR) |
| v. | : | |
| | : | |
| JPMorgan Chase Bank National Association, | : | |
| Defendant-Appellee. | : | |
| Jeffrey Zook et al., | : | |
| Plaintiffs-Appellants, | : | |
| OhioHealth Foundation, Inc. et al., | : | No. 15AP-751 |
| | | (C.P.C. No. 13CV-6033) |
| [Involuntary] Plaintiffs-Appellees, | : | |
| | : | (REGULAR CALENDAR) |
| v. | : | |
| | : | |
| JPMorgan Chase Bank National Association, | : | |
| Defendant-Appellee. | : | |

---

## D E C I S I O N

### Rendered on March 9, 2017

---

**On brief:** *Robert Gray Palmer Co., LPA,* and *Robert G. Palmer*; *Paul A. Bodycombe*, **for** Jeffrey Zook, Karla

Hindman, Kimberly Heath-Goodman, Cynthia Wolfe, Sean Zook, and Jason Zook.  **Argued:** *Robert G. Palmer.*

**On brief:** *Dreyfuss Williams & Associates Co., L.P.A., John F. Garswood, Nicholas J. Kopcho*, and *Michael T. Williams*, for OhioHealth Foundation, Inc. and Columbus Museum of Art.

**On brief:** *Carpenter Lipps & Leland LLP, Jeffrey A. Lipps*, and *Angela Paul Whitfield*, for JPMorgan Chase Bank, N.A. **Argued:** *Jeffrey A. Lipps.*

---

APPEALS from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1}  This is an action by beneficiaries of a trust bringing claims against the institutional trustee for negligence and breach of fiduciary duty. Plaintiffs-appellants Jeffrey Zook, Karla Hindman, Kimberly Heath-Goodman, Cynthia Wolfe, Sean Zook, and Jason Zook (the "Zook plaintiffs") appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, JPMorgan Chase Bank, N.A. ("Chase").  Involuntary plaintiffs-appellants, OhioHealth Foundation, Inc. and Columbus Museum of Art ("involuntary plaintiffs") together filed a separate notice of appeal from the same judgment. This court has consolidated the two appeals for argument and determination.

{¶ 2}  On October 10, 1990, John D. Zook ("John Zook Sr.") executed a last will and testament and created the John D. Zook Trust.  John Zook Sr. named his wife, Sharon Zook, as income beneficiary of the trust, and selected Chase's corporate predecessor, Bank One, as successor trustee of the trust upon his death.  The remainder beneficiaries of the trust at inception were the five adult children of John Zook Sr. by a previous marriage, John Zook Jr., Jeffrey, Karla, Kimberly, and Cynthia, as well as predecessor entities for the two charities that have become involuntary plaintiffs in the case.  Under Article VII of the trust instrument, the trust would terminate upon the death of Sharon and distribute all remaining assets to the remainder beneficiaries.

{¶ 3}  On November 26, 1995, John Zook Sr. died and Chase became successor trustee of the trust.  At that time, the greater part of trust assets were comprised of a

controlling interest in Zook Advertising, Inc. ("Zook Advertising") a business founded and operated by John Zook Sr.

{¶ 4} Article X of the trust instrument states in part:

> Being aware of the fact that the duties the Trustee has been requested to assume with respect to the business interests may considerably enlarge and increase the Trustee's usual responsibilities, duties, and work as Trustee, it is agreed that the Trustee shall be entitled to such additional reasonable compensation as is commensurate with the time, effort, and responsibility involved in the Trustee's performance of services rendered to the business may be paid by the Trustee from the business or from other assets, or from both, as the Trustee in the Trustee's discretion may determine to be advisable.
>
> Upon the death of the Grantor, the Grantor's spouse, SHARON G. ZOOK, shall have the right to either operate and manage any business and/or real estate (whether corporate, partnership, or proprietary in form) in which the Grantor had an interest at the time of Grantor's death which becomes a part of this trust, or designate any third party acceptable to the Trustee to operate and manage any such business, but subject to a management contract that either SHARON G. ZOOK or her designee must enter into with the Trustee.

{¶ 5} After John Zook Sr. died, Sharon immediately took over operation and control of Zook Advertising although she and Chase never entered into the management agreement required by Article X. When John Zook Sr.'s majority ownership interest, comprising 148 shares out of 150 issued and transferred to the trust in January 1997, Zook Advertising had an appraised value of $1,036,000.00 on the trust accounts and probate inventory. The balance of other trust assets at that time amounted to $258,904.69.

{¶ 6} The business thereafter went into a rapid decline under Sharon's management. The shares of Zook Advertising remained an asset of the trust until 2003, at which time Chase considered that the business was not only worthless but presented a significant risk of liability that could compromise the other assets still held by the trust. Chase then sold the trust's 148 shares to Sharon for the nominal figure of $5 per share, or $740.00 total. Shortly thereafter, Zook Advertising ceased business entirely.

{¶ 7}   In 2010, Sharon died.  Her death triggered termination and distribution of the trust under Article VII of the trust instrument.  Due to the intervening death of John Zook Jr. in 2003, two grandchildren of John Zook Sr., Jason and Sean Zook, had become remainder beneficiaries by this time under Article VII(1)(a), alongside the four surviving children and the charities.

{¶ 8}   David Curry, a Chase employee, sent a letter to each remainder beneficiary, advising that Chase would provide a "Receipt, Release and Refunding Agreement" for signature by each beneficiary so that Chase could close the trust and distribute the corpus. In his letter to the beneficiaries, Curry summed up the terms of the release agreement: "These agreements basically state that you acknowledge receipt of the assets, agree to release the Bank for the administration of the trust and also to refund any funds distributed out should additional taxes, bills or expenses be owed after we have released the funds."

{¶ 9}   Each of the Zook plaintiffs and involuntary plaintiffs eventually signed such a  release, which states in pertinent part as follows:

> NOW, THEREFORE, in order to induce the Trustee to terminate the Trusts without seeking formal court approval of its accounting, and to distribute all of the Trusts' assets to Jeffrey A. Zook, Karla L. Zook, Kimberly A. Heath, Cynthia A. Wolfe, Jason Zook, Sean Zook, OhioHealth Foundation, and Columbus Museum of Art, and in consideration of the premises and other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned, Jeffrey A. Zook, Karla L. Zook, Kimberly A. Heath, Cynthia A. Wolfe, Jason Zook, Sean Zook, OhioHealth Foundation, and Columbus Museum of Art remainder beneficiaries of the Trust (hereafter called the "Beneficiaries"), for themselves and their descendants, spouse, heirs, successors, assigns and legal representatives, agree and covenant as follows:
>
> That the accounting of receipts, disbursements and transactions of JPMorgan Chase Bank, National Association as Trustee from the inception of the Trusts to the date hereof are correct and approved, and all of the acts, doings, administration, and omissions of JPMorgan Chase Bank, National Association with respect to the Trusts are hereby ratified, affirmed and approved;

> That JPMorgan Chase Bank, National Association, as soon as is practicable, shall deliver the assets of the Trusts, including principal and any accrued or unpaid income to the Beneficiaries in the percentages specified as follows: Jeffrey A. Zook 8%, Karla L. Zook 8%, Kimberly A. Heath 8%, Cynthia A. Wolfe 8%; Jason Zook 4%, Sean Zook 4%, OhioHealth Foundation 50%, and Columbus Museum of Art 10%;
>
> That effective immediately, JPMorgan Chase Bank, National Association is released and discharged for having acted as Trustee of the Trusts and the Trusts are considered terminated;
>
> That Jeffrey A. Zook, Karla L. Zook, Kimberly A. Heath, Cynthia A. Wolfe, Jason Zook, Sean Zook, OhioHealth Foundation, and Columbus Museum of Art, remainder beneficiaries of the Trust, hereby agree to release, indemnify, defend and hold harmless JPMorgan Chase Bank, National Association, both as a Trustee of the Trusts and in its individual capacity, its affiliates and their respective officers, directors, employees, stockholders, successors, predecessors, assigns and representatives, against any and all action, inaction, grounds for complaint, and any causes of action, in law or in equity, suits, debts, liens, contracts, promises, taxes, interest, penalties, liabilities, losses, claims, expenses (including legal and other professional fees), costs or other demands which it may incur or which may be charged against it by reason of its acting as Trustee of the Trusts * * *.

(Emphasis sic.)

{¶ 10} Chase began distributing the remaining trust assets to beneficiaries in June 2011. On May 31, 2013, the Zook plaintiffs filed a complaint against Chase stating claims for breach of fiduciary duty and negligence, and adding a demand for an accounting and audit. These claims rested on the loss to trust corpus that resulted from the decline in value of Zook Advertising shares during Chase's oversight of the trust. The Columbus Museum of Art and the OhioHealth Foundation, Inc. were named as involuntary plaintiffs based on their status as remainder beneficiaries.

{¶ 11} On August 30, 2013, Chase filed a motion for judgment on the pleadings. On September 4, 2013, Chase filed an answer, counterclaim, and third-party complaint. The counterclaim alleged claims for breach and declaratory judgment against the Zook

plaintiffs. The third-party complaint sought indemnification from the estate of Sharon Zook. On September 23, 2013, the involuntary plaintiffs filed an answer to the Zook plaintiffs' complaint. On October 16, 2013, the Zook plaintiffs filed a memorandum contra Chase's motion for judgment on the pleadings.

{¶ 12} By entry filed March 24, 2014, the trial court granted in part and denied in part Chase's motion for judgment on the pleadings. Specifically, the court found that the involuntary plaintiffs had conceded that their claims against Chase were barred by the terms of a release and that Chase was entitled to judgment on the pleadings as to these parties. The court further agreed with Chase's contention that the Zook plaintiffs' claims for an accounting and audit were remedies and not separate causes of action. Accordingly, the court found Chase was entitled to judgment on the pleadings on that issue. The trial court denied Chase's motion for judgment on the pleadings as to the remaining claims by the Zook plaintiffs.

{¶ 13} On April 23, 2014, the involuntary plaintiffs filed a notice of appeal from the trial court's entry granting in part Chase's motion for judgment on the pleadings. On April 25, 2014, the Zook plaintiffs filed an amended complaint. On May 12, 2014, Chase filed an answer to the amended complaint, restating the prior counterclaims but not addressing its previous third-party claims against the estate of Sharon Zook.

{¶ 14} On May 15, 2014, the involuntary plaintiffs filed a motion for reconsideration with the trial court requesting the court reconsider its entry granting judgment on the pleadings in favor of Chase as to the involuntary plaintiffs. On June 3, 2014, Chase filed a response to the involuntary plaintiffs' motion for reconsideration. On June 9, 2014, the Zook plaintiffs filed a reply to Chase's counterclaim. By entry filed June 18, 2014, the trial court granted the involuntary plaintiffs' motion for reconsideration and vacated the judgment on the pleadings previously entered against them. As a result, the involuntary plaintiffs dismissed their first appeal to this court from the trial court's entry granting in part Chase's motion for judgment on the pleadings. *Zook v. JPMorgan Chase Bank, N.A.*, 10th Dist. No. 14AP-342 (June 16, 2014 journal entry of dismissal).

{¶ 15} On September 16, 2014, the Zook plaintiffs filed a second amended complaint restating their claims for negligence and breach of fiduciary duty. This is now

the operative complaint in the matter. On October 1, 2014, Chase filed an answer to the second amended complaint.  This pleading does not modify the prior counterclaim against the Zook plaintiffs. On October 31, 2014, the involuntary plaintiffs filed separate answers to the second amended complaint.

{¶ 16} On April 30, 2015, Chase filed a motion for summary judgment asserting that the beneficiaries' claims were barred by the releases and barred by the two-year statute of limitations imposed by R.C. 5810.05 on actions against a trustee. Chase also argued that the beneficiaries could not commence the action without tendering back the sums they had received upon distribution, and that the negligence claim was duplicative of the breach of fiduciary duty claim.  On May 12, 2015, the involuntary plaintiffs filed a response to Chase's motion for summary judgment.  On May 22, 2015, the Zook plaintiffs filed a memorandum contra Chase's motion for summary judgment.

{¶ 17} On July 1, 2015, the trial court conducted an oral hearing on the summary judgment motion.  The court then rendered a decision from the bench granting summary judgment on the basis that the releases barred any breach of fiduciary duty claim and the negligence claim was subsumed into a breach claim and similarly barred.  The court expressly rejected Chase's statute of limitations and tender arguments.  By entry filed July 7, 2015, the trial court journalized its decision and granted summary judgment in favor of Chase on all claims in the second amended complaint.  The entry did not dispose of Chase's counterclaims.  On August 5, 2015, the trial court entered a nunc pro tunc order to add Civ.R. 54(B) language and allow an immediate appeal without disposing of Chase's counterclaims and third-party complaint.

{¶ 18} On appeal, the Zook plaintiffs set forth the following assignment of error for this court's review:

> THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS-APPELLANTS ZOOKS IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE JPMORGAN CHASE BANK, N.A.

{¶ 19} The involuntary plaintiffs set forth the following assignment of error for this court's review:

> The trial court erred in finding that the burden of proving the invalidity of a release that releases a trustee from liability to a trust beneficiary is on the beneficiary and not on the trustee.

{¶ 20} We initially note that the trial court decided this matter by summary judgment which under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the non-moving party has no evidence to prove its case. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates that the non-moving party has no evidence to support each element of the stated claims. *Id.* "A plaintiff or counterclaimant moving for summary judgment does not bear the initial burden of addressing the nonmoving party's affirmative defenses." *Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, syllabus.

{¶ 21} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular,* 94 Ohio App.3d 579, 588 (8th Dist.1994); *Bard v. Soc. Natl. Bank,* 10th Dist. No. 97APE11-1497 (Sept. 10, 1998). Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Jones v. Shelly Co.*, 106 Ohio App.3d 440, 445 (5th Dist.1995). As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. *Bard*.

{¶ 22} The Zook plaintiffs and involuntary plaintiffs concede on appeal that, as the case is now postured, the underlying substantive claims against Chase for negligence and breach of fiduciary duty are not before the court. The sole issue on appeal is whether the trial court correctly found there remained no genuine issue of material fact on those claims solely because all plaintiff beneficiaries had executed releases barring subsequent claims against Chase for its administration of the trust. Otherwise stated, the only issues for determination here are the validity and preclusive effect of those releases.

{¶ 23} Ohio law provides for two alternative mechanisms by which a trustee may conclude its role as trustee and finally settle all questions of responsibility with respect to the trustee's actions. The first option is a judicial proceeding under R.C. 5802.01 and

2721.05. As an alternative to such judicial proceedings, the trustee may obtain a release from beneficiaries under R.C. 5810.09, 5808.17(C), and 5808.02(B)(4).

{¶ 24} R.C. 5810.09 provides in pertinent part as follows: "A trustee is not liable to a beneficiary for breach of trust if the beneficiary * * * released the trustee from liability for the breach. This section applies regardless of whether the conduct being * * * released * * * constitutes one or more breaches of fiduciary duty, violates one or more provisions of the Revised Code, or is taken without required court approval." Under R.C. 5808.17(C), a release is valid unless it (1) "was induced by improper conduct of the trustee," (2) the beneficiary "did not know of the beneficiary's rights," or (3) the beneficiary "did not know of the material facts relating to the breach" when the beneficiary signed the release.

{¶ 25} The evidence before the trial court consisted of depositions taken from the six individual beneficiaries, trust administration documents, probate documents, and depositions of certain bank employees. In granting summary judgment in favor of Chase, the trial court considered whether the Zook plaintiffs and involuntary plaintiffs had evidence supporting the application of any of the exceptions to invalidating a release. The court first determined that the Zook plaintiffs and involuntary plaintiffs had not shown any improper conduct or overreaching by Chase in obtaining the releases from the beneficiaries. The court noted in part: "We had pretty sophisticated beneficiaries. They're all fairly well educated. They knew about their father's business." (Tr. at 53.) The court also found the second exception inapplicable because the beneficiaries had not presented evidence to establish that they did not know of their rights. The court found that all beneficiaries "knew they were signing a release. They knew that they were releasing all claims against the bank. They may not have consulted counsel, but they could have." (Tr. at 54.)

{¶ 26} The court finally considered the third exception: whether the beneficiaries did not know of the material facts relating to the breach. The court found the knowledge standard under the statute to be "an objective constructive standard." (Tr. at 55.) The court held in pertinent part:

> Facts in the record, undisputed. The Zook children knew about the business. They knew they were signing a release -- at the point that they were asked to sign a release and got notice in 2011, they knew they were beneficiaries to a trust. Whether they knew before or not, again, and whether [Chase]

should have notified them all what was going on before, I tend to agree with Mr. Palmer.

Again, I think [Chase] didn't live up to what it was supposed to do here, but the Zook kids signed a release. I think they had constructive knowledge, at that point, of all the material facts relating to the breach.

You're going to sign a release; the business wasn't listed, and it had been listed before.

When their dad died, they did sign off on the right to go to hearings and those kind of things. A document was produced, a certified copy. They could have found out there was a trust way back when.

I find it hard to believe -- and, again, maybe this is not facts in the record, but I guess -- I find it hard to believe that kids, when they have a stepmom -- or not even a stepmom, but a third wife, and their father dies, lay people -- I mean, this is starting more fights in the law than anything in the entire world, except for drugs and sex, which I deal with in the criminal cases every day.

But money and remarriages, kids are going to go find out. Hey, dad died. I hope he didn't leave everything to her. You know, it's human nature. Let's be real.

At a minimum, they should have gone and checked. They also had the records. I don't think there's any dispute that, at least in the depositions, some of the documents were produced by Jeff Zook.

So they had these records. Whether they knew what they were or not, they had them. They certainly could have said, Hey, wait a minute.  We're being asked to sign a release. [Chase] is getting off the hook. We thought dad had a lot more money, and that business had to be worth [a] lot. And we're signing off on this?

Commonsense says that they should have investigated, and they did have the information.

Again, you know, listen, we -- all judges come from a background. We're not free from our own products of where we came from.  Nobody will find a judge that doesn't try to protect the little person as much as humanly possible, within

> the confines of the law. But I do believe the release here compels dismissal of this case, and that's the only ground upon which I'm dismissing the case.

(Tr. at 55-57.)

{¶ 27} On appeal, the Zook plaintiffs and involuntary plaintiffs do not contest the trial court's findings that the first two exceptions to a valid R.C. 5808.17(C) release do not apply. They argue under the third exception that, at the time they executed their respective releases, they were unaware of certain material facts concerning Chase's actions as trustee: the failure to comply with the trust terms due to the lack of a management agreement between the trustee and Sharon, the nature of the subsequent devaluation of Zook Advertising under Sharon's management and Chase's stewardship, and the extent of the consequent loss of most of the value of the trust corpus. They then argue that the trial court improperly placed the burden of proof on the Zook plaintiffs and involuntary plaintiffs to establish the invalidity of the releases, and that instead it must be Chase that bears the burden as trustee to establish that the releases are valid.

{¶ 28} Chase maintains on appeal that the trial court correctly placed the burden of proof on the beneficiaries to invalidate the releases. Chase then argues that the trial court correctly concluded there remains no genuine issue of material fact regarding the beneficiaries' knowledge of all pertinent facts regarding the loss of value in trust corpus due to the decline and demise of Zook Advertising. In connection with this knowledge of facts attributed to the beneficiaries, Chase argues that the beneficiaries are charged not only with actual knowledge, but with constructive knowledge of public records, or of material facts that would be ascertainable by reasonable inquiry or through examination of private documents readily available to the beneficiaries.

{¶ 29} The first issue placed before us, therefore, is which party bore the burden of proof with respect to the validity of the releases. The second issue concerns the extent to which the remainder beneficiaries, prior to executing the release presented to them by Chase, knew, should have known, or were held to investigate for themselves the conditions and events occurring during Chase's trusteeship.

{¶ 30} With respect to the burden of proof, we first note that in the summary judgment context this presents a different aspect than it would at trial. It is the essential nature of summary judgment proceedings that the parties merely bear a burden of

production, not a burden of proof.  The parties here respectively asserted a valid release on one hand and an exception to the validity on the other.  The preponderance of the evidence is not at issue, but merely the quantum of evidence necessary to maintain a genuine issue of material fact regarding the validity of the release.  That quantum does not vary with the burden of proof that may be borne in subsequent proceedings before a trier of fact.

{¶ 31} With that caveat, we agree with the trial court that once the trustee presents an executed release, the burden shifts to the beneficiaries to demonstrate that an R.C. 5808.17(C) exception applies to invalidate the release. The only Ohio authority on point, the case of *Cundall v. U.S. Bank, N.A.*, 174 Ohio App.3d 421, 2007-Ohio-7067 (1st Dist.), *rev'd on other grounds*, 122 Ohio St.3d 188, 2009-Ohio-2523, seems to hold otherwise and place the burden on the trustee to establish both the existence of a release and the validity thereof, but for several reasons we find *Cundall* neither controlling nor persuasive.

{¶ 32} *Cundall* involved self-dealing by a trustee and beneficiary who allegedly coerced other beneficiaries to sell him their shares in a closely held corporation for a low price.  The plaintiff beneficiaries alleged that this deprived them of the full benefit of the later sale of the business by the trustee to a third party for a much higher price.  The trial court granted judgment on the pleadings in favor of the trustee's estate, in part because the plaintiff beneficiaries had executed releases in favor of the trustee. The First District reversed on this and other issues, holding that the high duty of loyalty owed by a fiduciary meant that the trustee bore the burden of proving that he acted "solely in the [beneficiaries'] best interests concerning both the signing of the releases and the sales of * * * stock." *Id.* at ¶ 30. The court further posited, under the prominent heading "Releases Are Highly Suspect," that "documents that purport to release a fiduciary from liability concerning a transaction * * * where the fiduciary has gained some benefit, are highly suspect." *Id.* at ¶ 34.

{¶ 33} The first reason to approach the First District's opinion in *Cundall* with some caution, obviously, is that the pertinent rulings in the case, while not explicitly reversed, were rendered inoperative after further appeal.  The Supreme Court of Ohio chose to reinstate the judgment of the trial court on the sole basis that the complaint fell

outside the statute of limitations, reversing the court of appeals' determination on that issue only.  While the Supreme Court decision did not expressly pass on the validity of the releases, neither did it reflect any approval of the First District's decision on this point.

{¶ 34} Second, the First District's opinion itself expressly notes that the operative facts of *Cundall* pre-date enactment of the statutes governing releases in our case, and the current law may not apply: "[E]ven though the new Ohio Trust Code mandates that a trustee is not liable for breach of trust if the beneficiary has consented to the conduct, [R.C. 5810.09], that provision does not apply if the consent is procured by improper conduct of the trustee, a fact that [the plaintiff] alleged. Furthermore, the transaction in question took place in 1984, long before the 2007 Ohio Trust Code was enacted."  *Id.* at ¶ 29.

{¶ 35} Third,  because Cundall was a self-dealing case alleging fraud by the trustee, the discussion on any given point, including validity of the releases, is interwoven with references to the trustee's self-dealing as an aggravating factor undermining the releases:

> " '[Any] acquisition of the shares of the beneficiaries by one of the fiduciaries must be dealt with as presumptively void unless affirmative proof is made by the fiduciaries that their dealings with each beneficiary was in every instance aboveboard and fully informative. The fiduciaries in such circumstances have the obligation to show affirmatively not only that they acted in good faith but that they volunteered to the beneficiaries every bit of information which personal inquiry by the beneficiaries would have disclosed.'  If the *releases and stock sales* are to be proved valid in this case, the burden is on the fiduciaries to show that they acted with the utmost good faith and exercised the most scrupulous honesty toward the beneficiaries, placed the beneficiaries' interests before their own, did not use the advantage of their trustee positions to gain any benefit at the beneficiaries' expense,  and did not place themselves in a position in which their interests might have conflicted with their fiduciary obligations."

(Emphasis added.) *Id.* at ¶ 37-38, quoting *Birnbaum v. Birnbaum*, 117 A.D.2d 409, 416-17 (N.Y.App.1986), quoting *In re Rees' Estate*, 72 N.Y.S.2d 598, 599 (N.Y.Surr.Ct.1947). This determination to conflate the execution of the release as part and parcel of the underlying self-dealing fraud in *Cundall* makes it difficult to determine whether the same standard would apply in cases not involving alleged fraud by the trustee.

{¶ 36} Fourth and finally, we consider that *Cundall*'s expressed aversion to releases in fiduciary cases simply does not comport with the manifest intent of the legislature to allow such releases as a means of terminating a trust. R.C. 5810.09, 5808.17(C), and 5808.02(B)(4) all contemplate the use of releases as routine in trust matters. Releases, perhaps, should remain highly scrutinized in self-dealing cases like *Cundall*, but we do not have such a case before us. On the facts here, we conclude that once the beneficiaries admit that they executed a release, the burden shifts to the party seeking to invalidate it.

{¶ 37} We now consider whether the beneficiaries presented evidence to create a genuine issue of material fact regarding their lack of knowledge of material facts relating to the alleged breach of fiduciary duty by Chase.

{¶ 38} R.C. 5801.03(A) provides a general definition regarding "knowledge" with respect to trust matters, and states as follows:

> Subject to division (B) of this section, a person has knowledge of a fact if any of the following apply:
>
> (1) The person has actual knowledge of the fact.
>
> (2) The person has received notice or notification of the fact.
>
> (3) From all the facts and circumstances known to the person at the time in question, the person has reason to know the fact.

{¶ 39} Chase asserts, and the trial court agreed, that when assessing the validity of a release executed under R.C. 5810.09(C), all beneficiaries must be charged with constructive knowledge of not only matters of which they have actual knowledge, but facts that they would have "reason to know," R.C. 5801.03(A)(1), from the perspective of an objective, reasonable person, including all matters that are of public record.

{¶ 40} We find that the applicable standard, and the law clearly does not limit "knowledge" to "actual knowledge." Admittedly, in Ohio, a trustee has a high legal duty to act solely in the interest of the beneficiaries, "and the duty to exercise reasonable care and skill in administering the trust and preserving trust property." *Cassner v. Bank One Trust Co., N.A.*, 10th Dist. No. 03AP-1114, 2004-Ohio-3484, ¶ 28. This includes a duty to keep the beneficiaries informed. R.C. 5808.13. In the present case, however, while the Zook

plaintiffs argue that Chase did not inform them of material facts that would give them the required knowledge of an alleged breach of the above standard, the Zook plaintiffs do not allege that Chase hid or refused to provide any requested information. *Schwab v. Huntington Natl. Bank*, 516 Fed.Appx. 545 (6th Cir.2013).

{¶ 41} Constructive knowledge may be imputed from matters freely available in the public record. *See generally Lawyers Title Ins. Corp. v. MHD Corp.*, 6th Dist. No. E-10-007, 2010-Ohio-5174, ¶ 25. Charging beneficiaries with knowledge of publicly available information or information obtained through minimum investigation prevents them from "bury[ing] their head in the sand" with matters affecting an inheritance or expectancy. *Gracetech Inc. v. Perez*, 8th Dist. No. 96913, 2012-Ohio-700, ¶ 16, fn. 3; *see also Thompson v. Butler*, 2d Dist. No. 25408, 2013-Ohio-1075, ¶ 18.

{¶ 42} We first note that the deposition evidence indicates varying degrees of specific information known or available to certain Zook plaintiffs. Jeffrey and Kimberly acknowledged in their depositions that they specifically knew at the time of John Zook Sr.'s death that Zook Advertising became an asset of the trust. Karla learned this sometime later, when she examined a copy of the will out of curiosity. After Sharon's death, Cynthia, Karla, and Kimberly had full access to all records relating to the company, which were stored in boxes in Sharon's vacant home as they prepared it for sale. We do not consider these additional facts known only to some beneficiaries because there is no reason to impute to all Zook beneficiaries knowledge held by only some. The trial court did not consider the beneficiaries individually with regard to the degree of their knowledge of facts regarding the alleged breach by Chase. We therefore consider only the facts actually known or imputable to all Zook plaintiffs.

{¶ 43} Under this standard, the evidence on summary judgment was uncontroverted that the probate of John Zook Sr.'s will was a matter of public record, disclosing that the total value of the estate was $1.47 million, and that the single largest asset was Zook Advertising, inventoried at more than $1 million. At the time John Zook Sr. passed away, his five children received, or waived the right to receive, notice of the probate proceedings. The will expressly referenced the trust, which would include Zook Advertising. All of the Zook plaintiffs knew, at least in a general sense, that Zook Advertising had thereafter failed and was closed. After Sharon's death, the Zook plaintiffs

received periodic trust statements indicating that the company was not a trust asset. At the time the Zook plaintiffs executed their respective releases in favor of Chase, none sought additional information regarding the estate, trust, or Zook Advertising. We agree with the trial court that this evidence establishes constructive knowledge on the part of all Zook plaintiffs regarding the facts concerning the alleged breach of fiduciary duty. There remains no genuine issue of material fact to support the Zook plaintiffs' attempt to invalidate their releases under R.C. 5808.17(C). The sole assignment of error of the Zook plaintiffs is overruled.

{¶ 44} With respect to the involuntary plaintiffs, Chase argues that the involuntary plaintiffs did not contest Chase's earlier motion for judgment on the pleadings and have judicially admitted the validity of the releases; Chase fails to cite any authority for this proposition. To the contrary, this court has stated that a judicial admission must be a distinct and unequivocal statement: " 'A judicial admission is a distinct and unequivocal statement, made by a party or a party's counsel during a judicial proceeding, which acts as a substitute for evidence at trial.' " *Benchmark Contrs., Inc. v. Southgate Mgt. LLC*, 10th Dist. No. 13AP-390, 2014-Ohio-1254, ¶ 46, quoting *In re Regency Village Certificate of Need Application*, 10th Dist. No. 11AP-41, 2011-Ohio-5059, ¶ 32, citing *Haney v. Law*, 1st Dist. No. C-070313, 2008-Ohio-1843, ¶ 7.

{¶ 45} Nonetheless, the involuntary plaintiffs executed the releases and bear the burden of invalidating them under one of the grounds set forth in R.C. 5810.09. To avoid summary judgment, the involuntary plaintiffs bore the corresponding burden of production of evidence that would create a genuine issue of material fact regarding the validity of the releases. The involuntary plaintiffs did not submit or point to such evidence in their memorandum opposing summary judgment, limiting their argument to the assertion that "Defendant has failed to present evidence to establish that OhioHealth or CMA knew that Zook Advertising was an asset of the trust." (May 22, 2015 Memo Contra, at 6.)

{¶ 46} While nothing in the record indicates that the involuntary plaintiffs knew of the existence of Zook Advertising, let alone the circumstances under which the business failed and Chase's alleged failure to act in accordance with its fiduciary duties, the record is equally devoid of evidence that the involuntary plaintiffs lacked such knowledge

regarding the alleged breach. The involuntary plaintiffs have therefore failed to present evidence establishing that their remains a genuine issue of material fact regarding the validity of their releases, and their assignment of error is overruled.

{¶ 47} In summary, the assignment of error of the Zook plaintiffs is overruled and the assignment of error of the involuntary plaintiffs is overruled. The judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of Chase as to the claims brought by the Zook plaintiffs and involuntary plaintiffs is affirmed. The matter is remanded to that court for disposition of the remaining claims in the case.

*Judgment affirmed and cause remanded.*

KLATT and BRUNNER, JJ., concur.

_____