[Cite as *Greenawalt v. Freed*, 2018-Ohio-2603.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Estate of Roy Greenawalt et al., | : | |
| Plaintiffs-Appellants, | : | No. 17AP-62 |
| | | (C.P.C. No. 15CV-9469) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Estate of Ruth Freed et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 29, 2018

**On brief**: *Morganstern, MacAdams & DeVito Co., L.P.A.*, and *Christopher M. DeVito*, for appellants. **Argued**: *Christopher M. DeVito*.

**On brief**: *Kendo Dulaney, LLP, Andrew M. Engel*; *William H. Dulaney, III*, for appellees. **Argued**: *Andrew M. Engel*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, P.J.

{¶ 1} This is an appeal by plaintiffs-appellants, Estate of Roy Greenawalt ("the Greenawalt Estate"), J. Richard Cain (individually "Cain"), and Cheryl Lewandowski (individually "Lewandowski"), from an entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Estate of Ruth Freed (individually "the Freed Estate"), and Harry F. Panitch (individually "Panitch"), on appellants' claim for legal malpractice, and denying appellants' motion for partial summary judgment.

{¶ 2}   On October 22, 2015, appellants filed a complaint against appellees, alleging appellees had wrongfully administered the estate of decedent Roy Greenawalt ("decedent").   The complaint set forth causes of action for legal malpractice, breach of fiduciary duty, negligence, conversion, and fraud.

{¶ 3}   The following factual background is based primarily on allegations set forth in the complaint.   On May 1, 2004, decedent died testate.   On May 26, 2004, the Greenawalt Estate was opened in the Franklin County Probate Court (hereafter "the probate court").   Decedent's will "identified two specific beneficiaries in succession: (A) William A. Bricker" ("Bricker"), who was unrelated to decedent, "and (B) Ruth Cain" ("Ruth Cain"), the sister of decedent.   (Compl. at ¶ 9.)   Decedent's will provided in part: "I give, devise, and bequeath all my personal property to WILLIAM A. BRICKER.   Should WILLIAM A. BRICKER, predecease me, or should he and I be deceased in a common accident, I give, devise and bequeath my entire estate to my sister, RUTH CAIN."   (Compl. at ¶ 9.)

{¶ 4}   Both Bricker and Ruth Cain predeceased decedent.   Decedent had ten nieces and nephews, including appellants Cain and Lewandowski (the children of Ruth Cain). The complaint alleged that "[b]ecause Bricker, a non-relative, predeceased Greenawalt, Ruth Cain, the sister and blood relative, and any of her descendants were entitled to all distributions of the Greenawalt Estate as the only proper and legal beneficiaries according to Greenawalt's will and Ohio's Anti-Lapse law."   (Compl. at ¶ 10.)

{¶ 5}   Ruth Freed ("Freed") applied to be administrator of the Greenawalt Estate, and the probate court subsequently appointed Freed as the estate administrator.   On June 7, 2004, Freed posted a $600,000 bond from Ohio Casualty Insurance Company ("OCI").   Freed hired attorney Panitch, Freed's son, to handle the probate of the will.   On October 12, 2004, Freed posted a second bond in the amount of $589,000, and filed an inventory showing approximately $700,000 in assets with respect to the Greenawalt Estate.

{¶ 6}   Freed was paid a total of $40,000 in fiduciary fees as the administrator, including a $15,000 fee paid on November 17, 2004, and a $25,000 fee paid on May 1, 2005.   Panitch was paid a total of $53,500 in attorney fees, including a $10,000 fee paid on November 17, 2004, and a $43,500 fee paid on June 10, 2005.

{¶ 7}   In August 2005, Freed filed her first account, making disbursements to all ten of Greenawalt's nieces and nephews (i.e., his next of kin) in the total amount of $572,622.60, or $57,266.60 per person.  On October 11, 2005, the probate court approved the first account.  On December 16, 2005, Freed filed her final account, making further distributions in the total amount of $8,811.40 (i.e., $881.14 to each of the ten nieces and nephews).  On October 30, 2006, the probate court approved the final account.

{¶ 8}   Freed died on September 5, 2013, and the Freed Estate was subsequently opened in Franklin County; Freed's son, Panitch, is the executor of the Freed Estate.

{¶ 9}   In February 2015, additional assets in the Greenawalt Estate were discovered; specifically, "$106,838.40 was found being held with the Ohio Division of Unclaimed Funds in Greenawalt's name."  (Compl. at ¶ 22.)  The Greenawalt Estate was reopened to handle the new assets, and the probate court "declared Cain and Lewandowski to be the only legal and proper beneficiaries of the Greenawalt Estate." (Emphasis sic.) (Compl. at ¶ 22.)   The probate court subsequently approved the distribution of these newly discovered assets to Cain and Lewandowski, the children of Ruth Cain.  According to the complaint, "[i]t was only at this time that [appellants] learned of the previous wrongful disbursements and, subsequently, of the excessive attorney fees and fiduciary fees paid to and fraud committed by [appellees]."  (Compl. at ¶ 22.)

{¶ 10} On June 27, 2016, appellants filed a motion for partial summary judgment as to Counts 1 (breach of fiduciary duty), 2 (negligence), 3 (conversion), and 4 (legal malpractice).  On July 18, 2016, appellees filed a cross-motion for summary judgment; also on that date, appellees filed a memorandum contra appellants' motion for partial summary judgment.  On August 15, 2016, appellants filed a response in opposition to appellees' cross-motion for summary judgment.

{¶ 11} On January 23, 2017, the trial court filed a decision and entry granting appellees' cross-motion for summary judgment as to Count 4 (legal malpractice), and denying appellants' motion for partial summary judgment as to that same count.  The trial court also dismissed appellants' claims for conversion, negligence, breach of fiduciary duty, and fraud, finding that the probate court had jurisdiction over those claims.

{¶ 12} On appeal, appellants set forth the following assignment of error for this court's review:

> The trial court erred as a matter of law applying the statute of limitations; alternatively, questions of material fact exist precluding summary judgment.

{¶ 13} Under their single assignment of error, appellants assert the trial court erred in granting summary judgment in favor of appellees on appellants' claim for legal malpractice based on application of the statute of limitations for a legal malpractice action. Appellants argue that the cognizable event, for purposes of the statute of limitations, occurred on April 17, 2015, when the probate court issued its order regarding the newly discovered assets. Appellants maintain that application of either the discovery rule or the doctrine of equitable estoppel precludes summary judgment in favor of appellees.

{¶ 14} Pursuant to Civ.R. 56(C), summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This court's review of a trial court's decision granting summary judgment is de novo. *Warren v. Morrison,* 1oth Dist. No. 16AP-372, 2017-Ohio-660, ¶ 6. Similarly, "[t]he determination of the date a cause of action for legal malpractice accrues is a question of law reviewed de novo by an appellate court." *Cicchini v. Streza*, 160 Ohio App.3d 189, 2005-Ohio-1492, ¶ 17 (5th Dist.), citing *Whitaker v. Kear*, 123 Ohio App.3d 413, 420 (4th Dist.1997).

{¶ 15} In accordance with R.C. 2305.11(A), "[a]n action for * * * malpractice * * * shall be commenced within one year after the cause of action accrued." The Supreme Court of Ohio "has adopted the 'discovery rule' to define the date upon which a cause of action accrues and the statute of limitations begins to run in a legal malpractice action pursuant to R.C. 2305.11(A)." *Nicholas v. Deal,* 12th Dist. No. CA2002-10-242, 2003-Ohio-7212, ¶ 17. Specifically, "a cause of action for legal malpractice accrues and the statute of limitations begins to run when the client discovers, or, in the exercise of reasonable care and diligence should have discovered, that his injury is related to his attorney's act or non-act." *Id.*

{¶ 16} In *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54 (1989), "the Supreme Court of Ohio established a two-part test to determine when the statute of limitations begins to run on a claim for legal malpractice." *Downey v. Corrigan,* 9th Dist. No. 21785, 2004-Ohio-2510, ¶ 11. Specifically, in *Zimmie,* at syllabus, the Supreme Court held:

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

{¶ 17} Thus, Ohio case law requires "two factual determinations: (1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? The latter of these two dates is the date that starts the running of the statute of limitations." *Smith v. Conley,* 109 Ohio St.3d 141, 2006-Ohio-2035, ¶ 4.

{¶ 18} Under Ohio law, "[t]he elements of a legal malpractice action are (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Montali v. Day,* 8th Dist. No. 80327, 2002-Ohio-2715, ¶ 37, citing *Krahn v. Kinney,* 43 Ohio St.3d 103, 105 (1989).

{¶ 19} In its decision granting summary judgment in favor of appellees, the focus of the trial court's analysis involved the issue of when the cognizable event occurred. The trial court initially determined, however, without extended discussion, that "the termination date of the attorney-client relationship was January, 30, 2006," i.e., the date the probate court approved the final account. (Jan. 23, 2017 Decision & Entry at 11.)

{¶ 20} At the outset, we note the absence of evidence in the record as to a direct attorney-client relationship between attorney Panitch and the beneficiaries, Cain and Lewandowski. The facts on summary judgment indicate that Freed, although an attorney, was appointed to serve as administrator of the Greenawalt Estate. Following her appointment as administrator, Freed retained Panitch, an attorney, to assist with the administration. In their affidavits and deposition testimony, both Cain and Lewandowski

indicate they never spoke with Panitch.  They did, however, receive correspondence from Panitch (and Freed) during the probate proceedings.

{¶ 21} In general, the Supreme Court has "consistently reinforced the legal principle that only the client of an attorney or one in strict privity with the client of an attorney may properly assert a legal malpractice claim."  *Nye v. Eastman & Smith, Ltd.,* 6th Dist. No. L-13-1034, 2013-Ohio-4742, ¶ 23.  Thus, "attorneys in Ohio are not liable to a third party for the good-faith representation of a client, unless the third party is in privity with the client for whom the legal services were performed."  *Shoemaker v. Gindlesberger,* 118 Ohio St.3d 226, 2008-Ohio-2012, ¶ 9.  This principal "is rooted in the attorney's obligation to direct attention to the needs of the client, not to the needs of a third party not in privity with the client."  *Id.*  It has been noted that "[t]his strict privity rule is statutorily reinforced by the express language set forth in R.C. 5815.16, which states, 'absent an express agreement to the contrary, an attorney [who] performs legal services for a fiduciary * * * has no duty or obligation in contract, tort, or otherwise to any third party.' "  *Nye* at ¶ 24.

{¶ 22} In their reply brief, appellants rely on case law, including *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, ¶ 8, for the proposition that an attorney-client relationship can be "created by implication based upon the conduct of the parties and the reasonable expectations of the person seeking representation."  As evidence of an attorney-client relationship by implication, appellants cite the actions and written representations of Panitch and Freed, including written correspondence to the beneficiaries indicating that all ten nieces and nephews of decedent were entitled to distributions under Ohio law. Appellants characterize this correspondence as "*written* legal advice from attorneys." (Emphasis sic.) (Reply Brief at 9.)

{¶ 23}  Assuming, without deciding, the existence of an implied attorney-client relationship, and that such relationship terminated at the time of the final accounting,[1] we agree with the trial court's determination that appellants' claim for legal malpractice was

---

[1] There is no evidence in the record to suggest Panitch performed any legal services for appellants after that date, i.e., there is no genuine issue of material fact that an attorney-client relationship existed after the estate was closed in 2006.

barred by the statute of limitations. More specifically, we agree with the trial court's analysis that the cognizable event occurred no later than January 30, 2006.

{¶ 24} Under Ohio law, "[a] 'cognizable event' is an event sufficient to alert a reasonable person that his attorney has committed an improper act in the course of legal representation." *Asente v. Gargano,* 10th Dist. No. 04AP-278, 2004-Ohio-5069, ¶ 14. Further, "[t]he 'cognizable event' puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue remedies, and the plaintiff need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute of limitations." *Id.*

{¶ 25} In the present case, the trial court concluded that "the latest date that this action began accruing was January 30, 2006, when the Final Account was approved." (Jan. 23, 2017 Decision & Entry at 12.) In addressing the issue of the cognizable event, the trial court held in part:

> The events that should have put Plaintiffs on notice of their claim for legal malpractice occurred between 2004 and 2006 culminating in the approval of the Final Account on January 30, 2006. The information that led Plaintiffs to make the determination that Defendants had distributed the Green[a]walt Estate incorrectly was present and known to Plaintiffs during the process leading up to the Final Account.
>
> Plaintiffs had knowledge of the content of the Green[a]walt Will and the language contained therein.
>
> * * *
>
> Plaintiffs consented to all accounts and disbursements made by Defendants and filed no exceptions. * * * Further, they knew what Ms. Freed and Attorney Panitch intended to charge in fees and consented to the amounts in two instances. With knowledge of all the facts and circumstances, Plaintiffs had the opportunity to raise questions and objections during the original administration. Finally, they are presumed to know the law.
>
> Plaintiffs argue that the cognizable event occurred in February of 2015 when the Probate Court issued an order naming Plaintiffs next of kin for the distribution of the newly discovered assets. However, the focus of this analysis is on what the Plaintiffs were aware of, and not an extrinsic judicial

> determination. * * * As previously stated, Plaintiffs were aware of all relevant facts and circumstances by January 30, 2006. Further, Plaintiffs receipt of advice from separate legal counsel in 2014 and 2015 does not constitute the cognizable event because Plaintiffs were presumed to know the law.

(Jan. 23, 2017 Decision & Entry at 12-13.)

{¶ 26} As noted under the facts, the trial court in the instant case dismissed appellants' claims for conversion, negligence, breach of fiduciary duty, and fraud, finding the probate court had jurisdiction over those claims. We note that appellants initially brought all of the above claims, as well as a legal malpractice claim, in the probate court. The probate court subsequently granted summary judgment in favor of Freed and Panitch, and against Cain and Lewandowski, with respect to the claims for conversion, negligence, breach of fiduciary duty, and fraud, finding they were barred by the statute of limitations. Cain and Lewandowski appealed to this court from the probate court's decision granting summary judgment in favor of appellees.

{¶ 27} In a recent decision, *Cain v. Panitch,* 10th Dist. No. 16AP-758, 2018-Ohio-1595, this court addressed appellants' argument that the probate court erred in finding that, even under the discovery rule, the latest date appellants' claims for fraud and conversion began to accrue was January 30, 2006, when the probate court approved the final accounting. This court affirmed the probate court's grant of summary judgment, holding in part that "because appellants had actual and constructive knowledge of all relevant facts at the time of the final accounting, the probate court properly determined that the causes of action accrued no later than January 30, 2006." *Id.* at ¶ 50.

{¶ 28} Similarly, in the instant case, we find the trial court did not err in its determination that the cognizable event, for purposes of the legal malpractice claim, was no later than January 30, 2006. Here, there is no relevant or material fact that appellants were not aware of as of that date. As noted by the trial court, Cain and Lewandowski were aware of the terms of the will, and that their mother was named in the will. Further, they were fully aware of the final distribution of the assets and what appellees told them regarding the distribution, including the fact that all ten nieces and nephews of decedent were to receive an equal share of decedent's estate. As also found by the trial court, Cain and Lewandowski consented to all accounts and disbursements, and all attorney and

fiduciary fees charged were identified in the probate court documents (and consented to by Cain and Lewandowski).

{¶ 29} Appellants contend the cognizable event did not occur until 2015, when the probate court issued a decision regarding the unclaimed funds, i.e., when they "discovered" they were the sole proper and legal beneficiaries under Ohio's anti-lapse statute; appellants also contend they did not learn until 2015, after speaking with a new attorney, that the fees charged in the 2006 probate proceedings were excessive, pursuant to the probate statute (R.C. 2113.35) setting forth the compensation allowed administrators. This court has held, however, that "[t]he focus should be on what the client was aware of and not an extrinsic judicial determination." *McDade v. Spencer*, 75 Ohio App.3d 639, 643 (10th Dist.1991). Moreover, the cognizable event "*does not require actual discovery* of the existence of a legal malpractice claim." (Emphasis sic.) *Taylor v. Lord,* 7th Dist. No. 06 BE 46, 2007-Ohio-1565, ¶ 38, citing *Zimmie* at 58.

{¶ 30} Significantly, the discovery rule "applies to the 'discovery of facts, not to the discovery of what the law requires.' " *Koe-Krompecher v. Columbus*, 10th Dist. No. 05AP-697, 2005-Ohio-6504, ¶ 15, quoting *Lynch v. Dial Fin. Co.*, 101 Ohio App.3d 742, 747 (8th Dist.1995). As such, "ignorance of the law does not toll the statute of limitations." *Lynch* at 748. Further, under Ohio law, "*constructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." (Emphasis sic.) *Flowers v. Walker,* 63 Ohio St.3d 546, 549 (1992). In this respect, "[c]onstructive knowledge may be imputed from matters freely available in the public record." *Zook v. JPMorgan Chase Bank Natl. Assn.*, 10th Dist. No. 15AP-750, 2017-Ohio-838, ¶ 41 ("Charging beneficiaries with knowledge of publicly available information or information obtained through minimum investigation prevents them from 'bury[ing] their head in the sand' with matters affecting an inheritance or expectancy."). *Id.*, quoting *Gracetech, Inc. v. Perez*, 8th Dist. No. 96913, 2012-Ohio-700, ¶ 16, fn. 3.

{¶ 31} As noted, at the time of the final accounting, appellants had possession of all facts regarding the terms of the will and the manner of distribution. Again, it is constructive knowledge of the facts, rather than actual knowledge of their legal significance, that is enough to start the statute of limitations under the discovery rule.

*Flowers* at 549.   Appellants also had full knowledge of (and consented to) all the fees which they now claim were excessive.  Appellants' discovery, years later, that the fees were allegedly excessive under the probate statute based on information from another attorney is not sufficient to delay the statute of limitations.  *Lynch* at 748 (plaintiffs knew or should have known about itemized charges on documents they signed; "[w]hat plaintiffs 'discovered' seventeen years later is that their lawyer told them that these charges allegedly violated R.C. 1321.57," but such discovery "cannot be used to circumvent the statute of limitations").

{¶ 32} On review, we agree with the trial court that the cognizable event occurred, at the latest, on January 30, 2006, when the probate court approved the final accounting. At that time, appellants had knowledge of all relevant facts sufficient to place a reasonable person on notice that further inquiry was necessary relevant to a potential claim.  Thus, the trial court did not err in its determination that the malpractice claim was not timely.

{¶ 33} Appellants' alternative argument that the statute of limitations should be tolled based on the doctrine of equitable estoppel is not persuasive.  Appellants assert that equitable estoppel is applicable based on representations made by appellees regarding the distribution of assets under Ohio's anti-lapse statute, i.e., representations by Freed and Panitch that the assets of the Greenawalt Estate would be distributed to all ten nieces and nephews.

{¶ 34} The doctrine of equitable estoppel "precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good-faith reliance upon that conduct."  *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 245-46 (7th Dist.2000), citing *State ex rel Cities Serv. Oil Co. v. Orteca*, 63 Ohio St.2d 295, 299 (1980).  Under Ohio law, equitable estoppel "may be employed to prohibit the inequitable use of the statute of limitations."  *Id.* at 246, citing *Hutchinson v. Wenzke*, 131 Ohio App.3d 613, 615 (2d Dist.1999); *Walworth v. BP Oil Co.*, 112 Ohio App.3d 340, 345 (8th Dist.1996); *Schrader v. Gillette*, 48 Ohio App.3d 181, 183 (11th Dist.1988).

{¶ 35} A party seeking to invoke equitable estoppel must prove the following elements: " '(1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) [that it induced] actual reliance which is reasonable and in good faith; and (4) [that the reliance caused] detriment to the, relying party.' "  *Helman* at 246, quoting

*Doe v. Blue Cross/Blue Shield of Ohio*, 79 Ohio App.3d 369, 379 (10th Dist.1992). Further, "in the context of a statute-of-limitations defense, a plaintiff must show either 'an affirmative statement that the statutory period to bring an action was larger than it actually was' or 'promises to make a better- settlement of the claim if plaintiff did not bring the threatened suit' or 'similar representations or conduct' on defendant's part." *Id.,* quoting *Cerney v. Norfolk & W. Ry. Co.*, 104 Ohio App.3d 482, 488 (8th Dist.1995).

{¶ 36} In *Lottridge v. Gahanna-Creekside Invests., LLC,* 10th Dist. No. 14AP-600, 2015-Ohio-2168, this court addressed a plaintiff's claim that the doctrine of equitable estoppel should preclude the defendants from raising the applicable statute of limitations as a defense based on alleged misrepresentations by the defendants. In analyzing this issue, this court cited with approval a decision of the Fifth District Court of Appeals, *Kegg v. Mansfield,* 5th Dist. No. 2000CA00311 (Apr. 30, 2001), in which that court "rejected the application of equitable estoppel when the alleged representations related to the merits of plaintiff's claims and were 'in no way related to misrepresentations concerning the statute of limitations or a promise of settlement.' " *Lottridge* at ¶ 21, quoting *Kegg.* This court also relied on a federal decision, *Allen v. Andersen Windows, Inc.*, 913 F.Supp.2d 490, 511 (S.D.Ohio 2012), in which that court applied Ohio law to find that the doctrine was inapplicable where the complaint, while containing allegations that the defendant "engaged in acts and omissions that concealed defects," and that the plaintiff and others "could not detect" such latent defects, was "devoid of any allegation that [the defendant] made a misrepresentation that induced her to *forgo filing suit,* which is the sine qua non of equitable estoppel as it relates to estoppel to rely on the statute of limitations as a defense." (Emphasis sic.)

{¶ 37} In *Cain,* this court addressed the contention by appellants that the doctrine of equitable estoppel should prevent the statute of limitations from barring their claims for breach of fiduciary duty and negligence in the proceedings before the probate court. This court, relying on *Lottridge* and the authorities cited therein, held that "while appellants contend that appellees made misrepresentations going to the merits of their claims, i.e., that appellees misrepresented the law by informing them that all ten of the decedent's nieces and nephews were beneficiaries under Ohio's statute of descent and distribution, the record contains no evidence as to purported misrepresentations inducing

appellants to delay or forgo filing a lawsuit." *Cain* at ¶ 41. Finding that "the alleged misrepresentations by appellees 'are in no way related to misrepresentations concerning the statute of limitations,' " this court held that the doctrine of equitable estoppel was not applicable to toll the statute of limitations. *Id.,* quoting *Kegg*.

{¶ 38} Similarly, in the instant case, the identical purported misrepresentations by appellees (i.e., that the Greenawalt estate assets were required to be divided among all ten nieces and nephews), while related to the merits of the claim, are " 'in no way related to misrepresentations concerning the statute of limitations.' " Accordingly, we find no error by the trial court in failing to apply the doctrine of equitable estoppel.

{¶ 39} Based on this court's de novo review, we conclude the trial court properly granted summary judgment in favor of appellees on appellants' claim for legal malpractice based on the statute of limitations. We therefore overrule appellants' single assignment of error.

{¶ 40} Based on the foregoing, appellants' single assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and HORTON, JJ., concur.

————————————